We will hear argument this morning in Case 25-406, the Federal Communications Commission v. AT&T and the Consolidated Case. Mr. Wall? Mr. Chief Justice, and may it please the Court, the FCC imposed more than $100 million of civil penalties on AT&T and Verizon, and the companies had no way to demand a jury trial. That's a straightforward violation of the Seventh Amendment and this Court's decision in jarcosy. The government's only answer is that the penalties weren't binding. They were just invitations to pay $100 million if you want. And that's wrong for at least four reasons. First, the statute says that the FCC issues a charging document, considers the party's response, and then assesses and imposes penalties. That's not voluntary language. Second, it's the same language Congress has used in many statutes, including the FCC statute in jarcosy, and the government has never claimed it is voluntary. Third, there's an alternative procedure by which the Commission itself or an ALJ can assess and impose penalties. Same statutory language. The government appears to accept that type of forfeiture order is binding. And fourth, it's not how the FCC has read the statute for decades. Its regulation and guidance treat forfeiture orders as binding. These orders are Exhibit A. In bold capital letters, they command payment by a particular date. If the government were right about the statute, it would just walk them into a constitutional problem. They want these forfeiture orders because they know that legitimate parties pay 100% of the time. If your main regulator says that you are violating the law, you can't let that hang over your head indefinitely. But to guarantee any judicial review, AT&T and Verizon have to give up the right to a jury trial. It is hard to imagine a clearer case of penalizing the exercise of a fundamental constitutional right. I welcome the Court's questions. Well, Mr. Wall, if the government has maintained the argument that it did below, you would have a good point. But the government seems to have walked away from that argument. If we assume that the government now is taking a position that does not require the — does not involve the Seventh Amendment, what do we do with your case if we also think that the approach that it took in your case did involve the Seventh Amendment or implicate the Seventh Amendment? So I would say a couple of things, Justice Thomas. First, I think you've got to agree with them on the statute. You've got to agree that no matter what they try to disclaim, that the statute actually doesn't make these things binding, though it uses binding language and though every statute cited in Justice Sotomayor's charcassee dissent uses the same language, determine, assess, and impose penalties. That language, which has always been thought to be mandatory or compulsory, you have to accept isn't. But if you agreed with that, then I think you'd reach the question of whether these orders were ultra-virus. They clearly were. They do not speak in any voluntary language. They ordered us to pay. The government never gave any hint below that they weren't binding. And so at a minimum, we'd get our money back, and going forward, the agency would have to issue sort of non-binding orders. But I will say that would carve a huge hole in charcassee. That would mean tomorrow that you could take every charcassee-like scheme, and the agency could issue these non-binding orders that you, in fact, effectively have to comply with because of their inter-orum effect, all while the government sort of says, well, technically, they're not binding. And it seems to me that's just a way of dragging in through the back door what in charcassee said you couldn't bring through the front. Counsel, I wonder if, though, at the end of the day, you're really just talking about a PR problem, right? You're just saying they're big letters. The language said we did something bad, and that's so everybody has to pay so they don't get, you know, a bad PR. And I'm just wondering, in terms of the substantive legal issue, though, you are not obligated to pay until you get a jury. Well, Mr. Chief Justice, I think we have to separate whether you owe something from when you have to pay it. If I get a parking ticket from the government, I can ignore it and make them come after me. But I still owe it. So if the obligation here was binding, then I don't take the government to be trying to argue it's any different than charcassee. It's the agency adjudicating facts, finding liability, and imposing a remedy. So then the only question is, well, okay, but if they say it's nonbinding, but I still think, Mr. Chief Justice, you've got an order there that adjudicates you an egregious lawbreaker, tells you you're violating the law, and that you owe $100 million. And then you have to sit around for years to wait to see if you have any opportunity to challenge that in front of a jury. Well, but I understand your argument. You know, you're ordered to pay, and payment shall be due at a particular point. But even with your parking ticket, I mean, you don't have to – if you don't pay, you do get a legal proceeding. Whether a jury trial is required in that case or not, I don't know. But you still – it's just – it's the same issue. You just say this is a terrible thing, I'm labeled a lawbreaker, they say I've got to pay, I've got this parking ticket. And I guess I still wonder – I mean, if they change the language, would you be all right if it says, now, this is not to say this isn't over, he could still seek a jury trial, and constitutional rights will be respected, and he doesn't have to pay until this or that? I mean, do you still have the same case? I'll say a couple of things. No, I wouldn't be, because it's not what the statute says. The statute says they assess and impose like lots of statutes. That's a real penalty. I don't think they can walk away from it just because they're trying to avoid a constitutional problem. But even if you agreed with them on the statute, you'd have to say that the orders going forward are really toothless, because I don't think they can have their cake and eat it, too. And, you know, we can have a debate about what they can use them for. I look at the statute, 504, and their own guidance, and I think they can use it for lots of reasons. They say in their brief, well, we can only use it to look at the facts that we found. That seems to me just a self-imposed limit as a matter of grace, but even if you bought that, they can still use the facts for other purposes, even they acknowledge that, increasing a future forfeiture or in some future license or auction. So I don't think Mr. Chief Justice can get out of the statutory problem, but the only way they can get out of it, even conceivably, I think, is if they really want to say these orders are totally toothless. There's nothing they can do with them going forward. And, of course, the reason they want them is because that's not true. They know they hang over everybody's head. They know that for 50 years, no legitimate party has ever sat around and waited to try to get adjourned. How are they different in effect from a notice of apparent liability, or a more formal notice of apparent liability? That would hang over your head, too, but not take away your right to go to court for a jury trial. I mean, so, too, in Jarcusy, Justice Kavanaugh, the SEC was free to tell George Jarcusy they thought he owed some money. But once they pulled him in-house and they issued an order that found him a lawbreaker and said he owed money to the government, that's what the Seventh Amendment says you have to do in front of a jury as long as it's a claim at law and it falls outside the public rights exception. And I think there's a world of difference between the government telling you we think you may owe something and in a 100-page order telling you you absolutely do and you're an egregious lawbreaker and, by the way, we admonish you never to do it again. But don't you want us going forward, putting aside what we do with this case, Justice Thomas's question, but going forward, don't you want us to construe the statute that way, whether because of the Constitution or otherwise, such that it is, in effect, a notice of apparent liability? No. I think you should read the statute straight up and give it its most natural meaning. And then say what else? Say the statute makes these no less binding than every other statute that uses similar language, including the statute in Jarcusy, and the government at that point does not dispute that there is a Seventh Amendment problem and it's indistinguishable from Jarcusy. But then we construe the statute or construe the Seventh Amendment to require exactly what the government is saying it will do going forward. Justice Kavanaugh, I honestly think it is no more complicated than this. If you read this statute the way that it naturally reads, it would be Jarcusy all over again. So the government says, no, no, we're out of the Jarcusy box because it's non-binding. It's not like all those other orders. I think once the court rejects that, the case is simple. If the court agrees with the government and gives the statute what I think is a very unnatural reading, then the court would have to address the unconstitutional conditions argument, which is we are put to an incredibly difficult Hobson's choice. We either pay the money and go up to the Court of Appeals under the deferential standards of the APA, but we know we did judicial review, or we sit around and wait to see whether the government ever takes us to court. And that strikes me as that too significant a penalty for a fundamental right. Is it really a difficult choice going forward if we say that the statute means what the government says going forward? Again, Justice Kavanaugh, only if, notwithstanding all of the statutory provisions they don't address in their brief that allow the commission to take into account things like a regulated party's character or their pattern of disregard for the law, only if you say not just were these orders ultra-VRS, but they can't use them for anything. They are truly like nothing more than the agency's advisory view. But the agency wants these things, again, Justice Kavanaugh, because the agency does not intend for these things to be nothing more than pieces of paper that get thrown in a black hole. They intend for them to hang over people's head. There are ways in which they could use them. They have an interorum effect. And that's why they're willing to accept legally neutering this thing, because they know that in practical effect they are far from neutered. Well, Mr. Wall, if they are final and if they have, in your view, this effect, why do you have to pay them? I understand that there's D.C. Circuit precedent saying this. Do you agree with it? Why can't you do Hobbs Act review without paying? Why do you have this choice, not pay, come and get me in court, or pay and get Hobbs Act review? Why couldn't you get Hobbs Act review even if you don't pay? Well, because, I mean, what the D.C. Circuit said, and certainly the view the government takes, and has always taken, is that there are just the two paths to review that are laid out in the statute. One is you pay, you go to the court of appeals, that's in the statute, and the other is you hold out and you make the government come after you. There isn't a third statutory route, as far as I can tell. But it would otherwise be subject to review under the Hobbs Act. So we'd have to interpret the statute to say that for some reason the statute forecloses Hobbs Act review. I think that's right, but it has been settled for a very long time that where you don't pay the order, the enforcement mechanism for that is the government coming after you in the recovery suit, and that 504 is exclusive of the Hobbs Act. But that's settled only by the circuit courts. We've never said that. And we have our McLaughlin decision recently that calls that into question. I mean, what you're complaining about is that. You're not complaining about the fact that the forfeiture order has no teeth and is not enforceable until there's a trial de novo, both statutorily and in the order that was issued to you, you were told that. So really you're complaining about something else. You're complaining about the fact that you can't get judicial review without paying it first, but that's not what you're challenging. So let me say one thing, one more thing to you, Justice Barrett, which is I just think then that puts us straight back into the Seventh Amendment problem, which is dark as he says you get a jury in the initial adjudication. If we're all now agreed that this is an adjudication and the agency is telling you you have to pay, but then unlike here you get a statutory right, okay, it's Hoff, you get a right to go up, but it seems to me you've still got a Seventh Amendment problem, which is you might observe the Seventh Amendment in the second proceeding when you actually get to go to court and get the jury, but you don't get it in the first proceeding, which is the initial adjudication, and that strikes me as a real – I will say, Justice Barrett, I thought that's what this case was going to be about when the court granted cert. I thought that's the debate we were going to have, but the government, having seen our opening brief where we tried to explain why there are two different suits for Seventh Amendment purposes, hasn't joined issue on that. So it seems to me that would be an odd way for the court to go and resolve a constitutional question they're no longer contesting rather than just the statutory issue that's in front of the court. But couldn't it be a final order for purposes of Bennett, even if it was a notice of apparent liability? Does it have to be an adjudication in the sense of imposing this final obligation on you to pay in order to get Hobbs Act review? So I think it would be tough if it were just a notice of apparent liability to say it's final, and if we're really going to treat the forfeiture order as nothing more than a duplicative charging document that puts you on notice of the government's view, I'm not sure that it is final agency action for purposes of Bennett. I take the point that I guess we could try to argue that. We could try to challenge the D.C. Circuit case law, say that we have an independent appeal path and all the rest, but I will go ahead and tell you, I don't think it solves the problem. I'll be making the exact same jargonsy argument. Mr. Wall, can I ask you a question about that? So you paid, and therefore you have a right to appeal under the D.C. Circuit precedent to move forward. But if we were to adopt the government's view and take this as just a notice that we're coming after you, an indictment, a charge, an information, something like that, and there isn't a final order compelling you, do we have jurisdiction over this case? It's not clear to me that you do. I would imagine the government would say a lot of things. I think they challenge final agency action. I think they'll make a rightness argument. I think they'll make a jurisdictional argument. There are all sorts of things they haven't briefed because they haven't made any of these arguments. Well, I know the D.C. Circuit has held if you go ahead and pay, you have jurisdiction. I can't find that in the statute. And the government used to take the position, as far as I can tell, before the D.C. Circuit, that there wouldn't be jurisdiction in these circumstances. So I guess I'm a bit at a loss if we buy the government's gloss on what this document is. It doesn't mean what it says it means. Then I'm just not sure whether we have got a case or controversy before us. So that seems to be a problem for the government's view of the statute, which I think is wrong. The only other thing I'll say, Justice Gorsuch. Do you agree with what I've just said or disagree? Do you have any thoughts about it, though? It's very hard for me to imagine what space this order would occupy. What is it the agency is telling you? They've already given you a notice. I'm asking you to assume that it's just a piece of paper, okay, a notice, a charge, a serious piece of paper, but it isn't the final determination or adjudication of any liability. Do you think if that were true, we would have jurisdiction? I don't know, Justice Gorsuch. I will say I think that leaves us in the worst of all possible worlds. It means the SEC... I know you don't like it. No, no. It's not just that I don't like it. I don't like any of it, but I'm trying to figure it out. It's not just that I don't like it, Justice Gorsuch. It's that it's not a notice of apparent liability. Like, they went through an entire process. Maybe it's something in between. You know, it's more than a charge. It is the agency's determination of liability. It is a determination of liability, but it's the agency's determination of liability. And the thing that would make that conclusive would be if all you had to do was, like, to go get it enforced, and the court that enforced the order didn't have the right to look behind the order and decide for itself whether it was true. But that's not this case. This is the agency's determination of liability, but then a court can start all over again and say that it was wrong and does so with a jury if you wanted to. So I don't see why you would think that just the fact that the agency has decided this makes it conclusive or final in the relevant sense, given that an entire litigation of whether the agency is right can occur and that that litigation can occur with a jury. So, Justice Kagan, if they had come back in their gray brief and said, no, no, because you get to do it all over again de novo, it's not a Seventh Amendment violation, two different suits or what have you, that's what I thought this was going to be about. I would have said no. Jerkacy requires it in the initial adjudication and not providing it in front of the agency, just as with George Jerkacy, is the constitutional problem. They didn't want to take that on because I don't think they thought they could win that fight. So now they're saying, okay. Well, when you would have said that, I mean, I take it that there's no independent Seventh Amendment violation if there's not an Article III problem, right? So would you have said that giving it to the agency to determine liability in that fashion, given that it's not conclusive in the relevant sense, there's a whole new litigation that happens before anybody can enforce that agency decision, would you have said that that's an Article III problem? I would have said it is a Seventh Amendment violation and probably also an Article III problem. It can't be, I don't think, unless you're, I mean, maybe you'll tell me you have a different view. I don't think it can be a Seventh Amendment violation unless it's an Article III problem, right? Well, let me say this. Jerkacy didn't reach the Article III question. It decided it on Seventh Amendment grounds. I would think Jerkacy would be no different if in the statute that allows the DOJ to come after you in a recovery suit if you don't pay an SEC-imposed penalty, it were a de novo standard of review. Everything about this Court's reasoning would have been exactly the same. The agency can't haul you in and make you pay a civil monetary penalty for something that was an action at law and then say, but, you eventually get to get in front of a jury. Sure, the second proceeding respects the Seventh Amendment, but the first doesn't. I would have thought that this is just, you know, those two cases that we have all over again. It's Hoff, it's Meeker. It's like, no, you don't need the jury and the, you know, full hoopla the first time around as long as you get it the second time around. The agency can do what it wants as long as that doesn't put you under any kind of obligation to pay because you know that you'll get, like, starting all over again, a proceeding with a jury if you want it, it's fine. That's what both those cases said. Again, I thought that's what this case was going to be about. I thought that they were going to say, it's totally fine because of Hoff. And then I was going to say, no, Jerkacy requires an initial adjudication and Hoff is about small debts and it's a historically grounded exception that does not blow a hole through Jerkacy. And they didn't join issue on the constitutional question. All they're saying is that the de novo standard of review is you can draw a statutory inference that these things are non-binding. And I think that has to be wrong. If you look at the Fish and Wildlife Service example we gave in the brief, it's clear as day those are binding and you have de novo review. But even just more theoretically, if Congress amended the APA tomorrow to say that facts and APA actions are reviewed de novo rather than substantial evidence, I don't think anybody would think overnight that all agency orders become non-binding. The standard of review in the second action is logically distinct from whether the first thing is binding. And if the first thing is binding, we have an agency adjudicating liability and imposing a monetary penalty and that's Jerkacy. They can't do that. Maybe I don't understand what you mean by the first thing being binding. So can you help me to parse that language? I mean, to the extent that you don't have to pay, that there would need to be a subsequent enforcement action brought against you if you said I'm not paying, I don't know what you mean when you say that the first order is binding. Justice Jackson, I mean two things. One, it means it imposes a present obligation to pay. And two, that was equally true in Jerkacy. An obligation that is not enforceable unless and until the agency takes the further step of bringing this to court and as Justice Kagan points out, you then have an opportunity in front of a jury to say we don't have an obligation to pay. So it seems to me that the Seventh Amendment right, as in Jerkacy, as in other cases, kicks in when your legal rights and obligations are finally determined. That it's not really turning on the characterization of the order as being binding or not binding. It is what is the point in which your legal obligations are finally determined. In a situation like Jerkacy, that might be at the initial step. But here we have a different structure. We have one in which the agency is giving you essentially a charge. This is what we have determined. You brought up the traffic ticket scenario. I think that's a very good analogy. At the beginning, the government says we've got this videotape and we believe that you have engaged in this behavior. And so we say pay this amount. But you do have under our system the obligation or the opportunity to contest that. And when you do under this structure, you get a jury trial. So I guess I don't understand why you suggest that that initial determination by the agency is quote unquote binding and to the extent it is, it's somehow you had to have a jury trial right before that happened. Justice Jackson, equally true in Jerkacy, equally true in virtually every penalty provision in the federal code. You can decline to pay in Jerkacy. The DOJ would have had to bring a recovery action. With virtually every penalty provision, there is a general 28 U.S.C. 2641. The government brings a recovery suit to try to get the money that they told you you owe and you don't pay. Isn't this a different setup in the sense that, I mean, you can always decline to pay, but under the Jerkacy rule, the legal obligation, it was finally determined at the time the agency imposed that initial order. Here, are you saying that it is finally determined? I thought the way the statute was set up, it was not. It is finally determined for purposes of the agency. The agency has done an adjudication. Yes, you can decline to pay, and they can pull you into court. That was equally true in Jerkacy. It's equally true in virtually every- But I mean, that's part of the scheme. The scheme, the choice that you say you get to make is not paying and waiting for enforcement, and at that point, whether or not you're obligated to pay is then up to a jury in the context of that subsequent proceeding. That is Meeker. That's Hoff. I don't understand why this is not those cases. Let me try to put it a little differently, Justice Jackson. I think that if we all acknowledge that these orders actually required you to pay, I don't take the government to be disputing that that type of order entered by an agency would violate the Seventh Amendment and Jerkacy. They haven't made that argument in their brief. The only argument for getting out of the Jerkacy box is this isn't a real order. It doesn't make you pay. It simply tells you what we think that you owe, and what I would say is you could say that about virtually every penalty scheme if all you mean is you can decline to pay, and they have to take you to court. But you agree, Mr. Wall, that if it's not binding, it can't violate the Seventh Amendment? I don't agree with that, Justice Barrett. I think it's a harder question than what we have here. I think that there would still be arguments on, you know, I think of this as sort of a spectrum. Everybody agrees recommendations are fine, and everybody agrees adjudications are covered by the Seventh Amendment. If the agency does all of this, walks right up to the line, and then says, but we're not telling you you have to pay, and we have no right to go get a jury, we just have to sit around and wait, that strikes me as deeply problematic. It strikes me as the agency effectively doing it. What if you could seek review under the Hobbs Act without paying? Then I think it's a much harder question if they say the order is nonbinding and we have a right of immediate review. I would still be here saying I think it is, in substance, the same as Jerkacy, but it would be a harder case. So what defines suit at common law for purposes of the Seventh Amendment? So I think it's an adjudication of a claimant law rather than equity. In other words, I think when an agency determines liability, that is the sort of thing that triggers the Seventh Amendment. And I don't think the agency then gets to say, but look, it's just nonbinding or advisory, and we'll let it hang out there. I mean, these things have huge consequences. We were branded an egregious lawbreaker, a willful and repeat violator, and told we had to pay the government $100 million. That has a lot of consequences in the real world. I don't think they should be able to just slap a nonbinding label on the remedy and somehow avoid the entire Seventh Amendment analysis. But I'll grant I think it is a harder question, though I think we still win, and it is harder still if we have a right of appeal. We don't have either of those things here. And what's so odd to me is that we're, like, straining to read the statute in a very unnatural way, all for purposes of avoiding a constitutional violation that the government effectively acknowledges. And if we go that route, the court will have to decide the unconstitutional conditions question, which, I mean, I know that doctrine isn't often invoked by the court, but it seems to me if the doctrine has sort of any teeth at all, it would be this case, where we literally know for 50 years no one has ever not paid and tried to hold out to see if they could get a jury at the government's election. I mean, you just, in the real world, you cannot do it. And so it seems to me like we're avoiding what the government acknowledges seems to be an easy constitutional question, if we're right about the statute, to get to a harder constitutional question. And, again, all by, like, mangling the terms. When it says assess or impose, impose, if you look at any dictionary definition of the time the statute was enacted, means to levy as a charge or to make compulsory. Until the government's very brief in this case, it had occurred to no one for decades that these orders were not binding. It's not what their regulation says. It's not what their guidance says. And it's not a natural reading of the statute. Thank you, counsel. Justice Thomas, anything further? Justice Alito? Do you think that a scheme like this, or, for that matter, the scheme that was at issue in Meeker, is consistent with the original understanding of a suit at common law? It certainly seems to me quite different from what anybody would have understood a suit at common law to be when the Seventh Amendment was adopted. But suits at common law, suits asserting a legal claim today in federal court, don't look anything like what those suits would have looked like in 1791. So how far is it permissible for the government, for a statute to depart from what people would have understood a suit at common law to be at that time? I'd say a couple of things, Justice Alito. The first is, I think the court crossed that bridge back in the Parsons decision when Justice Sori said, it's not just the particular kinds of common law suits that existed in 1791, it is the various methods by which we ascertain legal rights in the same way we did in 1791. And two, even if you took a narrower conception of it, I still think this does look like a suit at common law. Granted, I know we didn't have cell phones and cell towers back in 1791, but if you had said, look, that merchant is not putting in place reasonable safeguards and it harms their customers, and that's the essence of this claim, that's a straightforward negligence claim at common law in 1791. And it would have been handled in a sort of a court of law, not an equity, and you would have gotten the Seventh Amendment right as long as the amount in controversy exceeded $20. I know we have to accept the fact that we're dealing with new technologies, but it's not really a new claim. It's really just a negligence claim that we didn't take care of our customers. I appreciate that, Mr. Wall. That wasn't really the thrust of what I was getting at. It is the question whether when the claim is in substance a claim to which there would have been a jury trial right at the time of the adoption of the Seventh Amendment, is it still consistent with that jury trial right for Congress to concoct a scheme that departs very radically from the substance of the jury trial, from the protection that a jury would have provided in 1791? No. I understood what you said before to be that there's a spectrum, and that would put us in a position of trying to figure out where on the spectrum to draw the line. Am I correct in understanding your argument? Well, a couple things. So I don't think we're on the spectrum. I think we're at the adjudication point because it's binding. We don't have any right of appeal on any measure where it was a Seventh Amendment problem. I do agree with you that even if you read it in some more non-binding way, and this was my answer to Justice Barrett, I still think there are hard constitutional questions because it still seems to me that you are coming extremely close to doing something that everybody would agree was an adjudication. You are not calling it a binding adjudication only to avoid having to provide the jury trial, even while you recognize that the value of walking right up to the line is that it forces the regulated party to do the thing that you want. That strikes me as a really serious and hard constitutional question that, fortunately, given the way the government's litigated the case, the court doesn't have to answer. But I will say one more thing, Justice Alito. I want to be fair to Congress. For a long time, this really was advisory, and that was the way it worked, and they recognized that there would be a Seventh Amendment problem if they made it compulsory. And then Atlas Ruthing comes out in 1977, and I think Congress, thinking there's no Seventh Amendment problem, converts it to compulsory and thinks, like, well, we've just given you optionality. I mean, you can go straight up to the Court of Appeals if you want, so what's the harm? And I don't think that Congress understood then what we understand now about the Seventh Amendment. So the statute looks like a pretty radical departure from the Seventh Amendment. But I think it wasn't out of step with where Congress believed the court was at the time given Atlas Ruthing. But it does – look, if you had said to the founders, can you do this? Can you have an executive branch official that tells you in-house that you owe $100 million, not in front of a jury, and you have no right to a jury? I mean, you wait around for years to see if the government ever comes after you? No, I think the founders would have been aghast. Thank you. Justice Sotomayor? That's why they say fourth statute of limitations. You often don't have, in the regular course, a right to demand that someone enforce the law right away. Yes, in some criminal cases you do, but that's what statute of limitations is. It gives the person with the legal right time to make the claim. So I don't know what the problem with that is. But I want to answer or go back to Justice Gorsuch's question about whether there's jurisdiction here and why this is unusual. In McLaughlin, we recognize that Congress often permits review of agency action, pre-enforcement, and post-enforcement. And we said that's perfectly natural. I don't see why this scheme is not a McLaughlin-like scheme with a pre-enforcement right. 402A says any order of the commission shall be reviewed under the Hobbs Act, correct? This is a forfeiture order is an order of the commission, correct? Unless some other scheme provides otherwise. Well, but the problem is that this scheme doesn't provide otherwise. It provides otherwise for an enforcement action, but not necessarily for an order of the commission. So why isn't this two distinct routes? A pre-enforcement review under a deferential APA standard and an enforcement action or collection that's de novo post-enforcement or when enforcement is being sought. So what's wrong with that scheme? Those are the two routes in the statute. You can pay and go to the Court of Appeals. Well, you keep saying we can pay. As Justice Barrett questioned you, I'm not sure where they get that from because Hobbs Act doesn't require payment. The Hobbs Act just says it's an order of the agency of the commission. You can seek review. Justice Sotomayor, let me put it in a different way. Only for purposes of our unconstitutional conditions argument am I focused on the manner of review because there it does matter. They put us to a choice that penalizes taking the option that gives us the jury trial right. But for purposes of my front line... No, no, no. You get the jury right regardless, meaning if they seek to enforce it, you get a jury right. There's no penalty for that. All I'm saying, we don't have the right to invoke a jury trial. We have to wait if we don't pay and see if the government comes after us. But for purposes of my front line argument, the Seventh Amendment argument, I'm not relying on the right of review at all, no more than George Jarcosy was in Jarcosy itself, which is to say the Seventh Amendment violation occurs when the agency pulls us in front of it and imposes civil monetary penalties for a claim at law. You don't have to pay it because what's different than a running complaint? Prosecutors give running complaints all the time where they say there's probable cause to believe that this person has committed this act and that they're liable to us for X amount. This forfeiture order is no different than that. We believe that you've committed this act, but we can't collect it unless there's a jury trial, and they tell you this, de novo, that decides whether in fact you owe the money or whether in fact you have to pay the money. Justice Sotomayor, that just seems to me an attack on Jarcosy in two ways. One, the SEC could have put out a notice of liability in Jarcosy itself and said here's what we think George Jarcosy owes. That would not have violated the Seventh Amendment. Counsel, I just, I'm going to end here because the problem with your starting proposition is their findings have no legal, don't create a legal obligation. The legal obligation is created when a jury finds that you've committed the act. And that's not true as a statutory matter, Justice Sotomayor. When an agency assesses and imposes penalties, it is no different than when you place any other fine on someone. It imposes a present obligation to pay. That's what the SEC did to George Jarcosy. Now, Jarcosy could have not paid. The government could have come after him in a recovery suit, and none of that would have changed the result in Jarcosy. It is true of virtually every penalty scheme I'm aware of, every one I know of on a federal level. They all say that the agency assesses and imposes penalties. We could go through them one by one. But if you don't pay, the government has to come after you in a recovery suit. No one thinks that makes them nonbinding, and no one should think it affects the Seventh Amendment analysis. Justice Kagan? Justice Gorsuch? Just to clarify, if we were to have to deal with what you thought the government's arguments were going to be, the hawk point, I take it, is that it's different. I just want to make sure I've got it, so tell me if I've got it. It's different when the government has in-house adjudication for which there's a right to a jury trial by either party immediately without awaiting a collection action. Here, there is no right that you have to seek a jury trial immediately. You have to sit around and wait for a collection action. Is that the gist of it? That is the first thing I would say, Justice Gorsuch, and that separates off this case. The second thing I would say is it seems to me then there's still a hard argument that the court would have to grapple with in some future case, which is when the agency does the whole adjudication like in Jarcosy, but you do have the right to go to court later. Is that a problem because you didn't get it in the agency? Is that an unconstitutional conditions kind of problem or a Seventh Amendment? Or a Seventh Amendment violation, exactly, and the court would have to say, how do we reconcile Jarcosy and Hoff? Does Jarcosy not mean really initial adjudication as long as there's a back and right, or does it mean it and Hoff is a historically grounded exception for small debts? I think the latter is probably a more satisfying intellectual answer, but the court could take either of those two paths. But either way, we wouldn't have to reach that second problem because the first problem is fatal.  Thank you. Justice Kavanaugh? When the government seeks a penalty, it would seem that so long as you get a de novo jury trial, that the Seventh Amendment in Article III would be satisfied, whether the agency process leading up to that was skimpy or thorough, whether it was one step or two steps, so long as you have that de novo jury trial, it would seem, and no penalty from failure to pay, no extra penalty from failure to pay the assessment early on. Am I wrong about that? Justice Kavanaugh, I tried to say this to Justice Barrett earlier. If there were a right here to get the jury trial, I think it would be a harder case. I'm not sure that it should come out to penalty. If there were a right, just assume, and you're not forfeiting an argument here, so just assume if there's a right to get a de novo jury trial and there's no extra penalty from failing to pay the assessment of the penalty, you understand that point, then doesn't that satisfy the Seventh Amendment in Article III? I'm not sure that jargonsy would or should have come out the same way, depending on the standard of review in the back-end collection action, and if Congress amended it... Well, it seems like the standard of review is critical, because if you're getting de novo, then... Justice Kavanaugh, I think it begs the question of what does the Seventh Amendment require? Does it require that you get a jury at some point, or does it require a jury in the initial adjudication? Well, you're just... Well, granted, it's harder. Can we just pause on the word adjudication? As you're well aware, the word adjudication covers just oceanfront of different things that go on in agencies. Some very informal things that go on in agencies are called adjudications. So I'll pin it down further and say where an agency is determining liability and imposing a monetary penalty, in that type of an adjudication, it's not obvious to me that the Seventh Amendment analysis should be controlled by just the standard of review in some subsequent proceeding, but I grant that it is a harder and different question here. But it's a labeling thing for what the final piece of paper the agency gives you says, correct? Yes, and all I'm saying to you is the reasoning of jarcossy doesn't have anything to do with the back-end action. I take the reasoning of jarcossy to be that if the government wants money from you on a claim at law, and it is a monetary penalty and not something equitable, that is the sort of thing that if the government wants to do, it has to go to court in front of a jury in the first instance. So here, if the agency had done less process and then given you the de novo jury, that would have been better, you think? Oh, yeah, that argument by the government I don't think holds up at all. In jarcossy, would it have been a different case if they had just mailed out a letter and said, here's what you think you owe, and then taken him to court? Absolutely. No Seventh Amendment problem at all. Form matters and forum matters, and they can't say, well, we're just layering on additional procedures where the additional procedure is a binding adjudication in front of the agency. It depends on the word binding, but let's move on from that, because I think I have your point on that. It seems like you've won on the law going forward, one way or the other. I mean, your reply begins, the government's in retreat. That's absolutely correct. I agree with you, and we'll explore that in a moment. But what you're complaining about, I think, and concerned about, and it's understandable, is you think you are misled into paying the money without getting the jury trial by what the government had in the orders. And I think that's a serious problem. I just want you to tell me how we should analyze that if we think the law gave you a de novo jury trial. This whole misleading, like we were misled by the language, the bold, and we were misled into giving up our rights. Is there something we can do about that?  What would that look like? So two things, Justice Kavanaugh. The second is actually more important than the first. The government acknowledges in its brief that if these orders actually commanded us to pay, they were ultra vires, and they exceeded its authority. The court should say that, and we should get our money back. Right. But the second thing I want to say is that's a Pyrrhic victory, in effect, unless you really say that the orders are toothless. Because if they get to do the same thing going forward and just say, well, we're not, like, commanding it. Sorry to interrupt, but if we say the orders are toothless and what they did here was mislead you and it's ultra vires, you're good. Correct? I don't think it's a natural reading of the statute, and whether I'm good depends on whether they're really toothless. Because the government acknowledges in its brief it can use the facts, and it acknowledges it can make law through these things. But they're toothless either because the statute is best read that way or because the statute is best read that way because of constitutional considerations or because the constitutional demands it. One of those three. All I would say, Justice Kavanaugh, is if the court's going to go down that road and give an unnatural reading to this statute, it just needs to make clear. There are lots of provisions where the FCC can use these orders. They can take them into account, I think, and the government doesn't disavow in its brief, every time it does any kind of a license or a spectrum auction, because those have provisions that say the commission, among lots of other factors, can consider the regulated party's character or pattern of disregard for the law. In the licensing proceeding, last question. Sorry to prolong it, but could they take into account a notice of apparent liability? So, no. I think the statute puts out of bounds the notice of apparent liability. I think we all agree on that. The statute, by implicit, doesn't say anything about the forfeiture order, and their guidance seems to suggest that they can use the forfeiture order for various purposes. In the licensing proceedings? In anything. I mean, in their brief, they say, we just take into account the facts. So even they acknowledge they have to do that. So for it to be really toothless, you're going to have to tell them, okay, they have to say that this is nothing more than, like, our view of what you owe and you're not required to pay it, and you cannot use it for any other purpose in front of the commission. You cannot take it into account, because as soon as you do, then it seems to me they've gotten their cake and eaten it, too. They've said, well, it's not really binding, but, boy, you know, we thought it was valuable and we can use it for lots of other purposes, and that's the height of unfairness. So, you know, they're going to have to really, you know, not use these things, and they don't come anywhere near that in their brief. Thank you. Justice Barrett? So, Mr. Wall, in thinking about whether this order is final or not, how much of it rides on the consequences? You know, the man says there's a lot of money at stake, that, you know, the commission can take it into account when making later decisions about, you know, spectrum, et cetera. Is it the consequences that are driving this? I don't think so. I mean, even the government doesn't dispute that the order is final. I'm just looking for the page in his brief where it explicitly says that, Justice. Well, I mean binding in the sense of creating an obligation to pay, because I guess this is where I'm going. I'm thinking, like, if you have a criminal case and somebody's indicted and the prosecutor comes and says, hey, listen, you're facing a really long sentence, but I really think you did this, so you have a choice. You can roll the dice and go and have a jury trial. Otherwise, I'll give you a sweetheart deal and you can forget all that. Well, that's the same kind of choice in some ways that the carriers are facing here. So, sorry, I didn't mean to be confusing. Everyone here agrees that it's final. Separate question whether it is binding in the sense of it imposes an obligation to pay. I think what separates it from the sort of plea bargaining context is that there the criminal defendant has a right to go in front of a jury but can choose to waive that right if it wants to get other benefits from the government. We don't have any right to go in front of a jury, and we can't waive it in return for anything from the government. The agency just pulls us into adjudication over which we have no power. We can't get a jury trial there, and we don't even have a right to it on the back end if one assumes that solves the Seventh Amendment problem and query whether it really does. So it seems to be very different from a situation where a criminal defendant has a right to say, nope, before you can tell me that I'm in trouble and you're sending me to jail or before anyone civilly can say I owe money, I get to be in front of a jury. And the companies would love that right. They would love to have invoked a right to go to a jury rather than be in front of the agency. But you could. Why? Why can't you just not pay? Because we don't have the right, Justice Barrett. The criminal defendant can say, you know what, prosecutor, I'll take my chances in front of the jury. We can't. We do not have a right to go to a jury. We have an agency that tells us we owe $100 million, and we just have to wait to see if they come after us. And if we don't, it hangs over our head for years. And nobody ever does that, and nobody ever will. Because when your main regulator tells you you owe hundreds, maybe even billions of dollars, you can't sit around and do nothing. Okay. Thanks. Justice Jackson? So I've heard you say many times that we don't have a right to go to the jury. On the unconstitutional conditions issue, I'm wondering why that doesn't defeat your unconstitutional conditions argument. I mean, the traditional unconstitutional conditions scenario is when a person has a right, and they are being coerced into giving it up by the thing that the government is requiring them to do. So it seems to me that just on that argument alone, the fact that you admit that you don't have a right to a jury to start defeats that argument. Why am I wrong about that? I think it's sort of one degree worse, not better. In other words, if we had a right to a jury, but let's say we had to pay a lot of money to get there, everybody would acknowledge that's an unconstitutional condition. Correct. That's the classic scenario. But the fact that you don't have a right, it would seem to me, takes you outside of the world of unconstitutional conditions. I think it's worse. Either do the really painful thing. No, I'm not saying worse or better. I'm just trying to understand why there's a condition operating that forces you to give up a right if you don't have the right.  I think the unconstitutional conditions doctrine must apply not just to when one of your options, though it is the far more onerous one, is to get the right, but the far more onerous option is just to have the opportunity to get the constitutional right. Do we have a case that has ever said that? I see that as a dramatic expansion or extension of the unconstitutional conditions doctrine. I don't think we've ever applied this to a scenario in which you don't already have the right that you're saying is being unconstitutionally burdened in this way. No, I think this scheme is unusual in the sense that it is not a direct penalty on choosing the right itself. It is one degree removed, and as I say, I think sort of constitutionally worse than that. And so, no, I don't think a scheme sort of this odd or that this far departs from the Constitution in that exact way. Let me ask you a question about it. Because in your conversation, I think, with Justice Gorsuch, you made clear that the gravamen of your argument is that you don't have a right to invoke the jury trial unless the government comes after you in terms of the enforcement proceeding. And I'm really struggling with why you aren't happy that the government is not coming after you. If the government is abandoning its claims by not seeking enforcement of it, I don't know why you would need a right to a jury trial, and why isn't that a good thing for you? Because, Justice Jackson, when the agency issues these things, A, it makes law that then binds the industry, B, it finds facts that are often, and as here, very negative, and C, it pronounces you a lawbreaker. Not just a lawbreaker, a willful or repeat lawbreaker. And when you tell someone that they owe the government millions because of a legal rule you disagree with, because you did a thing that you think you don't do, that imposes a real injury. Well, you know, if we analogize back to the traffic ticket scenario, that's what the government does to start. And the question is, to what extent can it be challenged? And if we had a traffic scenario that the government makes this charge, but you don't actually have to pay, and if the government comes after you for the money, you have the ability to contest it, I'm still struggling with why that's a problem for you. If the government never comes after you, I understand they've made this charge. It's out there. But under our system, as Justice Sotomayor suggested, just that charge is not establishing any legal obligation from your perspective. I would say two things, Justice Jackson. One, it's not just a charge. It's a final order that tells us we owe. And two, it was the same in Jharkhasi. The court could have said to Mr. Jharkhasi, you know what, you don't actually have to pay just because the SEC thinks you owe it. Wait around and see if the government comes after you. No, I understand. That always can happen in a penalty scheme, but this one seems to be structured differently. If we believe, and this is sort of what I thought Justice Alito might have started to hint at, if we believe that the structure of this system is that the agency order is just a statutory prerequisite for the DOJ to bring an enforcement action, to bring its lawsuit, then don't you lose, in other words, I don't understand the Seventh Amendment to be involved in that kind of situation because when DOJ brings its lawsuit, you will have a jury trial. Couldn't we envision this differently? In other words, what's happening here is that the government has to make these charges in this way in order to eventually be in a position to have a cause of action against you. But really the Seventh Amendment kicks in at the point in which the government files its enforcement action against you. It's very hard to understand the implication of your saying that you have to have a jury trial at the charging stage. Justice Jackson, I think they're just two separate questions. The Seventh Amendment kicks in when the federal government wants to assess and impose civil monetary penalties on somebody for a claim at law. It can label that however it wants. It can label it non-binding. It can label it a statutory prerequisite to a suit under any penalty scheme that has a recovery action by DOJ. It can label it however it wants. The Seventh Amendment doesn't care about any of those labels. The Seventh Amendment asks, was it a suit at common law in 1791? And this one would have been. So if the agency wants civil monetary penalties, we get a jury, and this statute doesn't allow that. Thank you. Thank you, counsel. Mr. Cerny? Mr. Chief Justice, and may it please the Court. I think it would be helpful if before I invite the Court's questions, I explain exactly the sense in which we mean FCC forfeiture orders are not binding. And I think the best way to do that is to point out three differences between FCC penalties and the SEC penalties that were at issue in Jercosy. The first difference is that although the SEC could file a recovery action in order to recover a penalty it had imposed, it didn't have to do that. It also had its own administrative tools with which to collect the penalties. For example, it could ask the IRS to deduct the amount of the penalty from your tax refund, or it could try to garnish your wages. And, of course, there's no path for a jury trial if it does that. For the FCC, however, the only way it can get to the penalties is to file this collection suit where you do get a jury trial. Second, if the SEC's administrative collection mechanisms failed and it decided it needed to go to court, you would get a trial, but it would be limited to the issue of whether you had paid the penalty. There would be no review of whether the underlying order was correct in the first place. Under the FCC scheme, by contrast, there is a de novo jury determination of whether you violated the law in the first place. And the third difference is that under the SEC scheme, interest could accrue immediately upon the SEC's imposition of the penalty. By contrast, under the FCC scheme, interest accrues only after the jury has made its determination, because that's when you owe the money. I welcome the Court's questions. So are you saying that in the determination of liability, no jury requirement, even if the penalty is at the back end as a remedy, that that determination does not require a jury? It requires a de novo jury determination at the back end as to liability, but the initial inconclusive determination by the agency does not require a jury, because it's just a prerequisite to the suit. It's not the suit itself. If I understand the real meat of Mr. Wall's argument, what he's really complaining about is I don't think he would have a complaint. I think all his arguments fall away if his client could immediately go to court and get the jury trial. And the thing he's really complaining about is that his client has to sit around waiting, and maybe you'll bring it, and maybe you won't, and maybe it will be tomorrow, and maybe it will be in five years. So that seems to me the real issue here, whether that itself creates a problem for you. Who answers for that? First, he doesn't have to sit around and wait. He can file a declaratory judgment action and initiate the proceedings himself, and if he does that, he gets a jury trial in that proceeding. Second, even if he does have to sit around and wait, what he's saying is sometimes you have to sit around and wait for a lawsuit to be filed. It is not a Seventh Amendment violation that the government might take time to file a lawsuit. The Seventh Amendment simply requires that when the lawsuit is filed, at that point there is an entitlement to a jury trial if it's a suit of common law. That is consistent with the scheme here. As for the unconstitutional conditions argument, I'd just like to put that in a bit of historical perspective. The FCC originally took the position that the only way to challenge an FCC forfeiture order is to decline to pay and to wait for the agency to bring an enforcement action. And that's what most people thought the scheme worked like from 1978 to 2003. In 2003, however, AT&T persuaded the D.C. Circuit that there's actually this second path of paying and getting Hobbs Act review. So now what Mr. Wall is saying is that the second path that AT&T has convinced the D.C. Circuit to create has created an unconstitutional conditions problem because it is coercing people into giving up their jury trial rights. Is that a thing? So, B-4 says you get a jury trial, okay, they know, whatever that is. And B-3 says if the agency in-house adjudicates the matter, then you get Hobbs Act review of the D.C. Circuit. All right. The D.C. Circuit, you're right, in 2003 said, ah, there's a third option. You know, you pay the fine, even if it's a B-4, you know, jury trial rule one, you can pay the fine and get the B-3 Hobbs Act review. Is that a thing? Yes. We have acquiesced in the D.C. Circuit's decision. Is it right? You argued against it before, and the brief was pretty compelling in front of the D.C. Circuit, I thought. We argued against it, but since then we have acquiesced in it, and let me explain why the Court doesn't need to reach that issue. There is certainly jurisdiction under the Hobbs Act because the Hobbs Act says that final orders of the FCC are reviewable. So the only question is whether there is an implied preclusion of review because of the implications of B-3 and B-4. B-3 and B-4 don't use the word jurisdiction, so it's just a question of an implied preclusion of review that is non-jurisdictional. So what's the final order that would be reviewable if this is a B-4 case? In a B-3 case, I know what the final order is. It's an order of you're liable. What's the final order that we have here? And is that in some tension with your argument that the notice you issued is just a piece of paper? It's the order authorizing the DOJ to bring the lawsuit. Well, the only thing B-4 requires is a notice of apparent liability. That's it. Is that a final order? No, that is not a final order because it does not consummate the FCC's decision-making process. So what's the final order? The final order is the order issued at the end of that process where the FCC says... But that's not contemplated by the statute. B-4 just talks about a notice of liability. You've invented this process. Can you explain how it does anything relevant to the statute? If you look to B-1, it says that if the FCC determines that a person has willfully and repeatedly violated the statute, then that person shall be liable for a forfeiture. Now, we've interpreted shall be liable to mean the DOJ can sue, but there still needs to be that FCC determination, which is reflected in the final order. So really, you were just saying the notice of apparent liability is a final order for purposes of the statute. That's what I'm hearing. What am I missing? What you're missing is the notice of apparent liability simply says respond to our charges. The final order says we've heard your response. I understand that, but that second piece isn't statutorily provided for. There's no necessity for it. There's no authority for it. You've just created that. The only thing that B-4 speaks about is the notice of apparent liability. We think it is in B-1. It is also in 504, which says forfeitures imposed under the provisions of this chapter are recoverable in the recovery action in the de novo proceeding. Okay. Go ahead, please. Sure. I understand your system going forward, and you've retreated in multiple ways from the original position that the government had. But I think another concern is how this case proceeded and that the petitioners were misled by what was said and by the government's position at that time into paying the money without realizing that you would switch positions later and say, oh, by the way, you didn't have to pay. You could have just waited for the charges to be brought and get your de novo jury trial right. I think that's a problem for you. I think that's a concern I have about how this has all unfolded. This does not seem regular order to me at all, and I want to know how you think we should deal with that and respond to that concern. Could I first attempt to say that that should not be a concern and then say if it is still a concern, then how you should deal with it? Yes. First, I don't think AT&T was misled because the order was extremely clear that it had a right to a jury trial before it could be required to pay. Let me read out four sentences from page 116A of the AT&T petition appendix. This is in the AT&T forfeiture order. First, after the commission issues a forfeiture order, AT&T is entitled to a trial de novo in federal district court before it can be required to pay the forfeiture. Second, AT&T has a, quote, statutory entitlement to a trial de novo in federal district court to ultimately adjudicate its obligation to pay a forfeiture. Third, AT&T has a, quote, statutory right to a trial de novo before it can be required to pay the forfeiture. And fourth, that AT&T theoretically might elect to pay the forfeiture voluntarily does not diminish its statutory right to a trial de novo. I can also prove that they knew this was our understanding of the statute. Here's what they said in their opening brief in the Fifth Circuit at page 33 before they'd seen any of our briefing when all they had was the order. They said, as the commission sees things, the Communications Act simply presented AT&T with a choice. One, pay the $57 million penalty and appeal to this court, or two, refuse to pay and await the filing of a collection proceeding. So I don't think AT&T was misled. Second, if you do have concerns about whether AT&T was misled, we do think it's important for the government to turn square corners when it's dealing with a citizenry. The government cannot mislead someone into waiving his jury trial rights. So what we would suggest is that the court should rule for us on the question presented, which is just about the statute, and then leave for remand disputes about whether this particular waiver of the jury trial right was knowingly involuntary or whether AT&T was misled. Alternatively, if you want to get into the issues yourself and you disagree with the points I've laid out, I suppose you could do that and conclude that we did mislead AT&T. Again, we don't think that's correct, but if that's the conclusion the court reaches, it certainly changed the language of the orders going forward. Your legal position when you say rule for you on the law going forward, what do you understand to be the difference between your current understanding of what the system should look like going forward and Mr. Wall's? I think Mr. Wall is suggesting that even if the FCC orders were nonbinding, there would be a Seventh Amendment problem because the agency is labeling its client a lawbreaker. So on that constitutional point, I think he's simply wrong. There is no constitutional problem with an agency saying, we've determined that you've violated the law and therefore the Department of Justice can now sue you. And the nonbinding word in what you just said, you take that to mean what? We take it to mean a few things. First, that the agency cannot start collecting the money as the FCC could in the jargons scheme. It has to go to court in order to collect the money. Second, there's no penalty or punishment for failing to pay that order. And third, that interest doesn't start accruing until the penalty becomes valid. How about collateral consequences to increase penalties for subsequent violations? We do not believe the FCC can use the orders themselves or the failure to pay until a court orders payment against a party. Okay, so there are no legal consequences that attach? There's only one legal consequence that attaches, and that is the Department of Justice can bring a lawsuit. That's it? That's it. One more thing, sorry. And that trial de novo is both a fact and law, correct? Absolutely. All right, sorry. I just wanted to follow up on Justice Gorsuch's point to clarify. So when Mr. Wall expressed concern about the collateral consequences in later proceedings, none of that. You just disagree with his understanding? There's one point of disagreement between us as to what the FCC can do in future proceedings. Let's suppose the FCC issues a penalty order and it finds a particular fact. Let's say that AT&T has 20 million subscribers. And let's say that fact is, again, relevant to some future proceeding. In our view, we can take that fact into account in the future proceeding not by giving preclusive effect to the original adjudication, but just by holding a new adjudication and re-adjudicating it because it is relevant to the second suit. What about the fact that it's a lawbreaker, or that AT&T is a lawbreaker? If that is relevant to a second adjudication, then we can find it again, but then they get their de novo jury trial in that proceeding as well. Does it have any preclusive effect is, I think, the question we're trying to get at, or whether it's just something that could be considered in the mix but is not given any special weight? It has no preclusive effect. It has no special weight. It is simply, if the same fact happens to be relevant again, it can be tried again. It can be tried again, but is it sort of like a fact like any other in the world that can be contested, disputed, and called into question and the commission can't give it any special weight? Yes, that's correct. What about in a licensed proceeding? You may have answered this, but how does it work there? What would happen in that... A renewal or licensing proceeding? What would happen in that situation is if the facts that were relevant to the initial proceeding were relevant to the second proceeding, there would be a fresh opportunity for AT&T to put on its evidence with respect to those facts, the commission would make a fresh determination, and you'd get a fresh round of judicial review. That judicial review is not... Because the licensing proceeding is a public rights proceeding. There's no jury trial right in that. Now, the one circumstance where I think the first proceeding might affect the second is let's say the first proceeding did end up in a jury trial before the second proceeding happened. Then the court's decision might have res judicata effect in the second proceeding, but the commission's decision would not have any such preclusive effect. Given what you think the remaining distance is between the government and Mr. Wall, of what relevance are Hoff and Meeker? Meeker is relevant because it disposes of what remains of Mr. Wall's argument once you accept that the orders here are nonbinding. There were a few questions to Mr. Wall about whether there would still be a Seventh Amendment issue if the orders were nonbinding, and he wasn't willing to give that up. But I think Meeker resolves that. The statute in Meeker allowed the icing seat to issue nonbinding orders that could then be enforced in jury trials, and that's exactly what's happening here. Indeed, this case is easier than Meeker because in Meeker the orders served as prima facie evidence, and in this case it's not even that. It's completely de novo. Hoff is just icing on the cake. In Hoff, the initial order issued by the justice of the peace was binding, and the losing party had the burden of appealing it to a jury. Here, by contrast, as we see it, the FCC order is nonbinding, and the government bears the burden of seeking enforcement. That ought to be even more clearly constitutional than the procedure in Hoff. Well, one thing we've talked about a little bit with your friend on the other side, but not you yet, is the government's retreat on how it's interpreting this statute. It does talk about assessing and imposing liability, and that, you know, one might normally think that that really does have a legal consequence attached to it. Now, you're running as far and as fast from that idea as you possibly can, and I would too, I get it, but how credible is that really? If you turn to page 13 and 14 of our brief, you'll see that we've been saying this since the 1970s. You'll also see that our position has been adopted by the D.C. Circuit, including in opinions after the 1978 amendments. Yeah, no, I appreciate all that, but assess and impose, those are the words of the statute. Suppose I care about words in the statute. Help me with that. I'd give you two answers about that. The first is that the word imposed appeared in the 1960 version of the statute, which Mr. Wall has conceded is nonbinding. The 1960 version of the statute said that, this is in Section 504B, 504A, any suit for the recovery of a forfeiture imposed pursuant to the provisions of this chapter shall be a trial de novo, and he says that's nonbinding. What happened in 1978 is Congress took the word imposed from 504 and repeated it in 503. We don't think repeating the same word converts a nonbinding order into a binding order. In addition— So you don't think what happened in the 70s was influenced by Atlas Roofing, for example? Oh, there was a different part of the amendment that was influenced by Atlas Roofing, because Congress created a second procedure where the ALJ could hold a hearing and his determination would be binding even without a de novo jury trial. So that's where the problem came in because of Atlas Roofing. The second answer to imposed is, if it had just said imposed on its own, then Mr. Wall might have a point, but the statute says any suit for the recovery of a forfeiture imposed shall be a trial de novo, and I think the juxtaposition of imposed and recovery in a trial de novo suggests that the imposition is not the final imposition. It's not conclusive. Do you think the proper analogy between this notice of apparent liability that the statute does speak of and your process is to something like an indictment or an information or a complaint? Yes. We think that this operates much like an indictment. It authorizes a lawsuit to go forward. It does not itself impose the final penalty. That is done only after the jury trial. Go ahead. Justice O'Rourke, I just wanted to give you a chance to reflect on the unconstitutional conditions. That's one argument. Now, I express some skepticism as to whether or not this scheme is actually placing a condition on the exercise of a right, given that there is no jury trial right until enforcement actions are initiated. Am I off base, or is that how you see it as well? You are correct about that, Justice Jackson. For there to be an unconstitutional condition, there must be a right that is being improperly burdened. For there to be a right to a jury trial, there must be a suit of common law, and for there to be a suit of common law, the Department of Justice has to file a recovery suit. Mr. Wall's entire case is premised on the idea that the Department of Justice might never file a suit, but if that happens, then there's no suit of common law, there's no right to a jury trial, and you can't have an unconstitutional condition. So if we accepted his argument, it would be an expansion or a different way of conceiving of unconstitutional conditions. That's correct. And even if you want to apply the unconstitutional conditions framework, what the Court has emphasized is that the question is whether the government's condition is serving an improper purpose. It's trying to coerce people into giving up their rights. That is not the purpose of this scheme. As AT&T said in a brief that it filed in the D.C. Circuit in 2002 and 2003, the purpose of the Hobbs Act alternative mechanism is not to coerce people to give up their jury rights, it's just if you have no factual disputes, it speeds up getting to the Court of Appeals. Thank you. Why would you pay and go to the Court of Appeals if the standard of review there is more deferential? Two reasons. First, before this Court's decision in McLaughlin, there was uncertainty potentially about whether you could get review of the law in district court. That's been resolved now, but that explains probably why carriers were going to the Court of Appeals before McLaughlin, because their challenges involved legal issues. The second reason that you might go to the Court of Appeals is that it's just quicker if there are no factual issues that need to be resolved before the jury. You're going to end up before the Court of Appeals anyway. You might as well do it as soon as possible. Regulated entities, at least to hear Mr. Wall describe it, haven't really understood this process the way you're calmly describing it today. Why do you think that is, or am I wrong about that? I'm afraid Mr. Wall is wrong about that, because in 2002, AT&T filed briefs in the D.C. Circuit describing how they thought the scheme worked, and here's what they said. First, they said, the act, quote, allows the carrier, A, to challenge the FCC's payment order in the Court of Appeals, or B, to refuse to pay and force a collection action in district court. Here's what they said in their reply brief in the same case. The carrier that, quote, refuses to pay, close quote, makes a, quote, choice that Congress has permitted under the statutory scheme. So this idea that the FCC orders are binding is not something we've invented in this litigation. It's something we've been saying, and regulated parties have been understanding. The people haven't been choosing that option. Because of the McLaughlin issue, probably. There was some uncertainty beforehand about whether you could get de novo review on the law as well, and that's probably why they decided to play it safe and go to the Court of Appeals. Probably collateral consequences, too. Even if they're not unconstitutional conditions, they were probably worried about that, or do you not acknowledge that? Whether or not they're worried, they shouldn't have been worried, because the FCC has been saying that we cannot consider either the forfeiture order or the failure to pay the forfeiture order against you. All we can consider are the facts, and not even by giving them preclusive effect. The one step missing here is why are they paying at all to go to the Court of Appeals? You've admitted it's a 402A final order, correct? Yes. The statute doesn't require them to pay before they exercise that right, so it seems to have come from a D.C. Circuit opinion that the Second Circuit has endorsed as well, but where does it come from? There are two reasons the D.C. Circuit reached that conclusion, which we do agree with. The first is the statute sets out a specific method for challenging orders where they haven't been paid yet, and that is waiting for the Department of Justice to sue and allowing the suit to go forward in district court, not in the Court of Appeals. So that implicitly precludes review in the Court of Appeals in cases where the orders haven't been paid. The other reason is... But now, because pre-enforcement suits, McLaughlin says you can have both. You can have a pre-enforcement challenge and a post-enforcement challenge, so... What McLaughlin says is you can have a pre-enforcement from the regulated party's perspective. You can choose between a pre-enforcement and a post-enforcement challenge. You normally don't get to do both at the same time, but one of the reasons the D.C. Circuit gave for adopting its interpretation was that the alternative reading would give regulated parties two bites of the apple. That is, you could first go to the Court of Appeals and bring your challenge there, and then after that fails, then wait for a de novo jury trial where you again get to raise the same issues once more. And the D.C. Circuit thought that wouldn't make much sense. But they don't get the second bite of the apple you do. Meaning it's the government's right to enforce, not theirs. So I'm a little confused. I'm still confused about why the... After McLaughlin, is the obligation to pay an open question? The Court does not need to resolve that aspect of the case in order to decide this case. But it is an open question. It's an open question of this Court, not of the D.C. Circuit. Got it. Nothing further. Justice Thomas? If the order is nonbinding, as you say it is, where does that appear in the ordering set clauses? As I read it, just two paragraphs, 83 and 84, it says it is ordered that AT&T is liable for monetary forfeiture of $57 million. And paragraph 84, it says payment of the forfeiture shall be made in the manner provided for, and it goes on. I, again, admittedly just skimmed that, but it doesn't appear to have any disclaimer-type language that says it's nonbinding. You're correct, Justice Thomas, that that language is not in the ordering clauses. It is instead in page 116A in the language I read to Justice Kavanaugh earlier. Even if you don't agree with that, the most that we'd have to do is change the language of the order. I'd also add... You think you should? I think that we would have avoided this litigation potentially if we had done so, so it might be a good idea. But could I add just one more point on that, Justice Thomas? If you look at the ordering clauses in Meeker, the ICC orders there, it said it is hereby ordered that the railroad is authorized and required to pay. Nevertheless, that was understood as a nonbinding order because that's how the statutory scheme worked, and we'd make the same argument here. Justice Alito? Justice O'Donnell? Justice King? Justice Gorsuch? Justice Kavanaugh? Justice Barrett? Justice Jackson? Thank you, counsel. Rebuttal, Mr. Wall? So the most straightforward way to resolve this case is to say that for 50 years everyone, including the agency, has understood these orders to impose a present and binding legal obligation to pay, and if that's what they do, as everyone has always thought up until the government's brief in this case, even the government does not contest there is a Seventh Amendment violation. That is the most natural meaning of the words in the statute. It is what their own regulation says, 1.80G4, page 22A of the appendix of our brief, says must be paid, and it has long been the government's position. Mr. Suri is right that for a long time the government has acknowledged that you can decline to pay, and it would mean the government has to take you to court. But that is quite different from saying that you do not actually owe the amount that the government has assessed you. That position the government has not long taken, nor did AT&T, which was a different company, not the present AT&T, back in the day. That position didn't emerge until the great brief in this case. I think also going that route allows you to avoid some of the hard constitutional questions that the Court's been asking this morning about what happens if we say that it doesn't impose a binding obligation to pay. Do we still have a jarczy problem, or is it Hoff, and do we have an unconstitutional conditions problem? All of that is avoided by just giving the statute its most natural meaning. But if the Court decides to give the statute what I think of as a quite unnatural reading, then at least a few things need to happen. My clients need to get their money back, because whatever the scheme is the government is defending now, it doesn't bear any resemblance to the scheme everybody understood in the lower courts. These orders have to be truly toothless, and I want to be clear, that's not what the statute says. 504C says they can't use the notice of apparent liability. Everything that Mr. Suri disclaimed may be at the government's grace, but it's not in the statute. Though if this Court requires it, the agency will have to abide it going forward, but let's be clear, he says they can use the facts, and presumably they can also use the fact that we didn't pay in our lawbreaker when it considers character or persistent disregard of the law, statutory circumstances that the Commission can consider, under a host of different provisions that deal with things like licenses and spectrum. Now, I understand Mr. Suri to say, well, it's not preclusive. You can come in and challenge it again, of course, but now we've just got a domino problem. We couldn't get a jury in the first instance, so we had to pay or hold out and not get a jury. Now you're going to use it again in this order, and we won't be able to get a jury there either. If you disagree with us again, we'll have to sit and wait, and then you'll take it into account in a future adjudication where we again won't be able to get a jury, and so on down the line, and the problem just cascades. It doesn't get better, and I hear Mr. Suri to say we can bring a declaratory judgment action. I'm not entirely sure how that's consistent with McKesson and McLaughlin, but if the government's conceding it, fair enough. Then we get our money back. These orders are truly toothless because otherwise their nonbinding argument falls apart, and we get to bring a declaratory judgment action. At the end of the day, I don't think the scheme they're defending is anything like a natural reading of this statute. It is not what Congress created. It is not what the agency and every regulated party has understood for 50 years, but if we are going to remake this scheme, then let's remake it where it is not even a paper tiger. It's truly just a piece of paper, and if there's nothing more than the agency's view, I still think that presents hard constitutional questions about whether an agency can walk you right up to the line consistent with the Seventh Amendment and then claim, but there's no jar tissue problem here, and I think the court should avoid all of those. But at a minimum, these orders shouldn't be worth anything more than the paper they're printed on, and we ought to get our money back. Thank you, counsel. The case is submitted.